No. 14,490.

SANTA ANITA CORPORATION ET AL. *v.* WALKER, RECEIVER.
(106 P. [2d] 459)

Decided October 14, 1940.

Mr. WILLIAM A. BRYANS, Mr. S. HARRISON WHITE, for plaintiffs in error.

Mr. CLARENCE L. BARTHOLIC, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

JOHN RUTHVEN WALKER as receiver of the Glen Investment Company, an expired corporation, instituted an action in equity in the district court of the City and County of Denver against the Santa Anita Corporation, A. G. Keitel, C. M. McCutchen, Lorin F. Long, also known as L. Long, surviving members of the last board of directors and former statutory trustees in dissolution of the Glen Investment Company, an expired corporation, and Albert C. Monson, public trustee in and for the City and County of Denver, Colorado. Plaintiff prevailed in

the district court and defendants the Santa Anita Corporation and A. G. Keitel seek a reversal of the judgment. The parties will be designated as plaintiff and defendants, as they appeared in the district court, or by name.

Defendants allege seventy-five errors, the seventy-third assignment being as follows: "The said judgment of the district court is erroneous and is not based on sufficient evidence, or any evidence, to warrant the entry of the same." We think no other assignment of error requires consideration. If the admitted facts and the undisputed evidence do not disclose a situation under which plaintiff is entitled to the equitable relief granted, or to any relief, any errors that may have been committed in determining the sufficiency or insufficiency of the pleadings, and erroneous rulings if any made during the course of the trial, are immaterial. The abstract of record is voluminous and the briefs are of great length. Together they comprise more than one thousand pages.

The defendants are charged with defrauding the stockholders of the Glen Investment Company. McCutchen and Long by omitting to perform their duties as statutory trustees for the benefit of the stockholders of the company, whose corporate charter expired August 11, 1931, and McCutchen by actively conspiring with A. G. Keitel to transfer its assets to the Santa Anita Corporation, which was owned and controlled by A. G. Keitel. Our examination of the record does not disclose that the Glen Investment Company, upon its expiration, had any assets other than an equity in Elgin Hall, an apartment house in the city of Denver, and some tax certificates which were pledged, together with a $40,000 note of the company, to secure an indebtedness to the International Trust Company for money loaned, which indebtedness, prior to the matters involved in this case, had been reduced, presumably by company funds, to approximately $17,000 and further by the proceeds from an insurance

policy on the life of F. W. Keitel, a member of the last board of directors of the corporation, to approximately $12,860.22.

■ At the time of the expiration of the charter of the corporation Elgin Hall was subject to a first deed of trust securing the payment of a note for $100,000. As additional security for the payment of the note, and by a separate contract executed contemporaneously with the note and first deed of trust, the net rents over and above the cost of operation of Elgin Hall were pledged to the liquidation of this $100,000 note. When this action was instituted, and for a number of years prior thereto, the rents were being collected by the holders of the note and contract pledging the rents and, after payment therefrom of operating expenses in accordance with the terms of the contract, were applied to the payment of said note. It does not appear anywhere in the record that at the time of the expiration of its charter or at any time thereafter the Glen Investment Company had any income other than the rents from Elgin Hall. Unless we assume that it was the duty of the statutory trustees to pay up the company's debts and taxes with their personal funds in order to protect the assets of the company for the stockholders, we are unable to discover wherein McCutchen and Long, as such trustees, neglected any duties to the damage of the stockholders. We are not willing to hold that the duties of statutory trustees include an obligation on their part personally to assume such a burden. Plaintiff's apparent impression that their duties extend thus far may have arisen from the fact that Fred W. Keitel and his wife, Selma Keitel, who were members of the last board of directors, and statutory trustees, while living, repeatedly renewed the note of the corporation held by the International Trust Company on which there was a balance due of about $17,000, signing it personally, and during the course of such renewals pledging an insurance policy on the life of Fred W. Keitel as additional secur-

ity, which resulted, so far as appears from the record, upon the death of Mr. Keitel December 29, 1935, in Selma Keitel, the beneficiary of the policy, paying $4,218 of the expired corporation's debt. So far as the record discloses, no reimbursement has been made to her or to her heirs or legal representatives. Whether she, during her lifetime was, or her heirs now are, entitled to such reimbursement we express no opinion, as that issue is not involved and we mention it solely as a possible historical basis for the unwarranted assumption by plaintiff and the trial court that McCutchen and Long omitted duties that they should have performed.

We are unable to discover from the record that A. G. Keitel sustained any direct trust or fiduciary relationship to the Glen Investment Company, its statutory trustees, or its stockholders. He had no connection with the company prior to the death of his brother, Fred W. Keitel, December 29, 1935. January 1, 1936, he entered upon the duty of collecting the rents of Elgin Hall by request of Hurbert Thomas, agent of the Western Securities Company the payee of the note secured by a first mortgage of $100,000 and holder of an assignment of the rents of Elgin Hall as additional security for the payment of said note. This note, long prior to this suit, had been transferred to an insurance company and payment thereof guaranteed by the Western Securities Company, which still retained the assignment of rents. A. G. Keitel was merely the agent of the last named company and was not obligated or required as its agent to deposit the rents in any particular bank account. His duty was to collect them, pay the operating expenses, and account to the company for the net balance. The record does not disclose that he ever failed in his duties in any respect or that the net rents were not applied to reducing the first mortgage indebtedness on Elgin Hall. This is all the stockholders of the Glen Investment Company had any right to require, and, so long as the rents were so applied, it was immaterial what other elements

of fraud the receiver might have shown in the conduct of A. G. Keitel with respect to the Elgin Hall rents, if he failed to establish one indispensable element to actionable fraud, namely, damage. The only way the value of the other assets of the Glen Investment Company—the tax certificates—could be preserved, if any they had, was by payment of taxes, and it is not shown that there were funds available or that could have been made available for that purpose, it appearing that the revenues from Elgin Hall, the only income of the expired corporation, had been assigned to apply on payment of the first mortgage note.

A. G. Keitel, being under no duty as a trustee or fiduciary of the Glen Investment Company, other than an indirect duty to operate Elgin Hall and apply the net rents to the payment of the first mortgage indebtedness, which it is not shown he failed in any particular to do, was under no disability which would prevent him from purchasing for himself or his Santa Anita Corporation the collateral pledged to secure payment of the debt to the International Trust Company. There is no evidence in the record that McCutchen and Long, the statutory trustees, conspired with him or aided or abetted him in so doing or that they participated or intended to participate in any profits, if any, to be realized from such purchase.

■ ■ There remains to be determined only the right that the Santa Anita Corporation acquired as purchaser of the collateral at the foreclosure sale. There is no showing that the sale was irregular in any respect. Assuming its regularity, as under such state of the record we must, in so far as the collateral consisted of property not involving any obligation of the Glen Investment Company to pay money or constituting a lien on its property, to which it might or might not have available defenses, the purchaser acquired the title to the same as against the Glen Investment Company, its stockholders, its statutory trustees, and the plaintiff receiver. The only remaining question is whether the receiver has any

available defense as to the $40,000 note secured by the second mortgage in foreclosure or whether the Santa Anita Corporation stands in the position of a bona fide holder for value in due course and is entitled to require payment in full. There can be no question that to the amount of the International Trust Company's judgment of approximately $12,860.22, which it purchased, the Santa Anita Corporation is entitled in equity to enforce payment by foreclosure of the deed of trust, whether it is or is not in the position of a bona fide holder for value in due course. To hold otherwise would necessitate our saying, without any rule of law or principle of equity to support the holding, that no equitable obligation rested on the Glen Investment Company to pay the debt which admittedly it owed the International Trust Company for money. borrowed and received by it.

To determine whether the Santa Anita Corporation is entitled to enforce, as an innocent holder for value before maturity, payment of the $40,000 note by foreclosure of the second deed of trust, it is necesary to set forth the history of this note as disclosed by the admissions and uncontroverted evidence contained in the record. The note was dated November 8, 1928, and by its terms was payable on or before one year after date to the National Mortgage and Discount Corporation. It provided for the payment of installments of not less than $1,500 of the principal on or before December 8, 1928, and a like amount on or before the eighth day of each and every month thereafter until November 8, 1929, at which time the remaining unpaid balance of principal was due and payable. The note provided for a reasonable attorney's fee in an amount not less than $1,200 in case of foreclosure, and was secured by a second deed of trust on Elgin Hall. Another note for $40,-000, payable to the National Mortgage and Discount Corporation and evidencing a loan of $40,000, which the Glen Investment Company received, was executed and the note secured by the second deed of trust was

pledged as collateral security for the note evidencing said loan. It appears from the record that this loan was paid, and that the $40,000 note secured by the second deed of trust was endorsed by the National Mortgage and Discount Corporation without recourse and returned to the Glen Investment Company. The latter company then sought to secure a loan of $22,000 from the International Trust Company, offering the $40,000 note secured by the second deed of trust as collateral security. Apparently on April 24, 1930, when the $22,-000 loan was procured from the International Trust Company, there was endorsed on the back of the note the following undated agreement:

"Interest paid in full to May 1, 1930.
"The time of payment of the principal of the within Note and each and every installment thereof is hereby extended to May 1, 1931, all other provisions of said Note to remain in full force and effect.
"The Glen Investment Company.
                    "By F. W. Keitel,
                        "President.
"The International Trust Company.
                    "By P. E. Cleland,
                        "Vice-President."

There were numerous renewals of the $22,000 note and unpaid balance thereof. On May 15, 1931, which was during the corporate life of the Glen Investment Company whose charter expired August 11, 1931, that company and the International Trust Company entered into an agreement extending the time of payment of the indebtedness evidenced by the $40,000 note to the first day of May, 1936, renewing and continuing in full force and effect the notice and lien created by the trust deed securing the same to May 1, 1936, subject to all terms of said note "it being hereby agreed that the time of payment of said indebtedness and of each and every installment thereof as provided in said note is hereby extended

to May 1, 1936." There was endorsed on the back of the note by the stamp of the trust company the following undated writing:

"The time of payment of the principal of the within note is hereby extended to May 1, 1936 on the same terms and conditions as heretofore, as per recorded extension agreement, except all payments extended to May 1, 1936.

"August 1931                    $ Int. paid in full
"March 8, 1932,               $ Int. pd. in full Keitel."

On April 30, 1936, one day before the due date of the note as extended, the Santa Anita Corporation made full payment to the International Trust Company for the assignment of the judgment which the trust company had procured on the note evidencing the indebtedness still due from the Glen Investment Company and the collateral involved in this action, consisting of tax certificates and the $40,000 note secured by the second deed of trust. Thereafter, on May 4, 1936, the Santa Anita Corporation purchased at execution sale under the judgment, which had theretofore been assigned by the trust company, all of said collateral for the sum of $12,860.22, and paid for the same by satisfaction of the judgment.

The second cause of action pleaded by plaintiff in his amended complaint is that the defendants and each of them knew that the $40,000 note secured by second deed of trust had been paid, that nothing was due on said note and "that notwithstanding such knowledge the said defendants A. G. Keitel and Santa Anita Corporation purported to purchase said note after maturity and [are] not bona fide holders for value in due course." There being no evidence of conspiracy between A. G. Keitel and McCutchen and Long, whether McCuthen and Long had knowledge of its payment, if such was the fact, is immaterial. There is no evidence that A. G. Keitel knew of the history of the $40,000 note other than that it was pledged as collateral for the Glen Investment

Company's loan from the International Trust Company. The endorsements on the note are evidence of the fact that time of payment had been extended, and the evidence discloses that the Glen Investment Company had agreed to the extensions, and that within the time for which it was extended the Santa Anita Corporation purchased the same for value. This evidence being uncontroverted and the maker of the notes, the Glen Investment Company, having participated in the action by which the payment date of the note had been extended, thus giving to it the appearance of being unmatured until May 1, 1936, it was error for the court to hold that defendants should account for the note or other collateral which the Santa Anita Corporation purchased and to enjoin the foreclosure of the second deed of trust which secured the note.

We perceive nothing in the record that would justify the court in ordering an audit of the rent account and no portion of the expense so entailed should be imposed on defendants.

The evidence being insufficient to afford a basis for equitable relief to plaintiff, the judgment in his favor is reversed.

Mr. Chief Justice Hilliard and Mr. Justice Bakke dissent.